**Roshan Karasan BHAKTA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–02–00771–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 6, 2003.

Charles G. Kingsbury, Houston, for Appellant.

Charles A. Rosenthal, Jr., Dist. Atty.—Harris County, Amanda J. Peters, Asst. Dist. Atty., Houston, for State.

Panel consists of Justices HEDGES, NUCHIA, and HIGLEY.

## OPINION

SAM NUCHIA, Justice.

Appellant, Roshan Karasan Bhakta, was charged by information with driving while intoxicated (DWI). He filed a motion to suppress the results of his breath test. Following a hearing, the court denied his motion to suppress, and appellant plead guilty to DWI, receiving a sentence of three days in jail and a fine of $500. On appeal, appellant alleges that (1) the trial court erred in finding that the State's breath test expert, Ricky Viser, was qualified to testify as an expert and (2) there were insufficient facts known about appellant for a retrograde extrapolation to be reliable.

## BACKGROUND

At 3:02 A.M. on December 13, 2001, Officer B. Eichenberg of the Houston Po-

lice Department pulled appellant over for suspected DWI. A breath test was administered at 4:27 A.M., and appellant tested positive for alcohol. A second breath test was given at 4:30 A.M. The first test had a result of .149 and the second test had a result of .163. Appellant stipulated that he had his last drink at 2:00 A.M. The State used retrograde extrapolation to establish that appellant was legally intoxicated at the time that he was pulled over.

At the suppression hearing, Ricky Viser testified that he was a breath test supervisor for the Houston Police Department Crime Laboratory. He explained that retrograde extrapolation is a method of taking the result of a breath test and estimating what the blood alcohol content (BAC) of the driver would have been at an earlier time, usually that of the arrest or stop. He further testified that since he knew the time of appellant's last drink and the time of the stop, he could assume that appellant was in the elimination phase and, thus, extrapolation with only one test was possible. He proceeded to perform extrapolations based on various hypotheticals, including a hypothetical with the specific known facts of the appellant. During his cross-examination, Viser discussed some of the possible difficulties associated with retrograde extrapolation, focusing on the problems that could occur when the time of the last drink and the presence of food were not known, but stated that only certain characteristics are needed in order to extrapolate.

Appellant contends that the trial court erred in overruling his suppression motion because (1) the testimony of the State's expert, Ricky Viser, was unreliable, which would disqualify him as an expert, and (2) there was insufficient factual evidence on which to base the extrapolation, thus causing the probative value of the extrapolation

to be substantially outweighed by its unfairly prejudicial effect.

## DISCUSSION

### Standard of Review

The standard of review for the admissibility of evidence is an abuse-of-discretion standard. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990). In determining whether the trial court abused its discretion, we consider whether the court acted without reference to guiding rules or principles; that is, whether the court acted arbitrarily or unreasonably. *Id* at 380.

### Extrapolation Reliability

Appellant contends that the trial court erred in finding that the State's expert was qualified to testify as an expert because his testimony regarding retrograde extrapolation was inconsistent and he did not have sufficient knowledge of the science underlying retrograde extrapolation.

The Court of Criminal Appeals held in *Mata v. State* that retrograde extrapolation can be reliable in a given case, but that the expert's ability to apply the science and explain it with clarity to the court is a paramount consideration. *Mata v. State*, 46 S.W.3d 902, 916 (Tex.Crim. App.2001). The expert must demonstrate some understanding of the difficulties associated with the extrapolation and an awareness of the subtleties of the science and risks inherent in any extrapolation. *Id.* Finally, he must be able to apply the science clearly and consistently. *Id.* Therefore, in order to use retrograde extrapolation, a State's expert must demon-

strate his ability to use and to explain the technique.

In *Mata*, the court found that the retrograde analysis was unreliable because the testimony of the State's expert was inconsistent, the length of time between the breath test and the stop was significant, and the State's expert did not know any significant characteristics about Mata, including whether he had eaten, when his last drink was, or even Mata's weight. *Mata* 46 S.W.3d at 917. The State's expert apparently contradicted himself on the length of the absorption phase, Mata's probable BAC at the time of the stop, the number of drinks needed to increase from below a .10 to a .19 BAC, and the average elimination rate. *Id.* at 915.

■ In the present case, Viser explained the use and methods of retrograde extrapolation in a clear and understandable manner. First, Viser's seven years of employment as a technical supervisor with a background in both biology and chemistry, while not determinative of his expertise, suggests that he has the general background to perform retrograde extrapolations. He testified that he had practical experience in calculating BAC using retrograde extrapolation and had taken part in studies calculating BAC in controlled settings. Viser explained the scientific theories underlying retrograde extrapolation and demonstrated an understanding of the methodology and risks inherent in using retrograde extrapolation. Further, Viser used retrograde extrapolation to calculate BACs in response to hypothetical situations, including one in which all of appellant's known characteristics were given. He explained how certain factors, such as whether a person had an empty or full stomach and what kind of food had been eaten, would affect how alcohol was absorbed and thus the blood alcohol level. While Viser did fail to convey to the court

how Henry's Law and Boyle's Law applied to retrograde extrapolation, his explanation of retrograde extrapolation itself was not affected. Viser's testimony was useful for a factfinder to properly understand how retrograde extrapolation was used and possible problems that could arise when making an extrapolation. Therefore, the trial court did not abuse its discretion by allowing Viser to testify. We overrule appellant's first point of error.

### Factual Considerations

In his second point of error, appellant argues that there was insufficient factual evidence on which to base an extrapolation and thus the probative value of the evidence was outweighed by the prejudicial effect.

■ A court evaluating the reliability of a retrograde extrapolation should consider

(a) the length of time between the offense and the test(s) administered; (b) the number of tests given and the length of time between the tests; and (c) whether, and if so, to what extent, individual characteristics of the defendant were known to the expert in providing his extrapolation, including, but not limited to the person's weight and gender, the person's typical drinking pattern and tolerance for alcohol, how much the person had to drink on the day or night in question, what the person drank, the duration of the drinking spree, the time of the last drink, and how much and what the person had to eat before, during, or after the drinking.

*Mata,* 46 S.W.3d at 916. However, "not every single personal fact about the defendant must be known to the expert in order to produce an extrapolation with the appropriate level of reliability." *Id.* Thus, using retrograde extrapolation to deter-

mine a person's BAC level after an arrest requires that the person calculating the retrograde extrapolation have sufficient known facts to determine what the driver's probable breath test score was at the time of driving.

■ In the present case, appellant stipulated to the time of his last drink, his weight and height, the time of the breath tests, the results of the breath tests, his last meal prior to being stopped, and the time of that meal. The breath tests were performed two and one-half hours after appellant's last drink—an hour and one-half after appellant was stopped. The longer the period between the stop and the BAC test tends to diminish the reliability of the tests. *See Mata*, 46 S.W.3d at 916. However, a significant number of appellant's personal characteristics were known, both those facts stipulated to and facts used in each individual calculation, which would tend to increase the reliability of the extrapolation. *Id.* A rational trier of fact could find that a reasonable extrapolation could take place, despite the delay between the stop and testing, given this knowledge of the appellant's personal characteristics. We hold that there was sufficient evidence on which to base an extrapolation and that the probative value was not outweighed by any prejudicial effect of Viser's testimony. We overrule appellant's second point of error.

## Conclusion

We affirm the decision of the trial court.